UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEMETRIUS V. MUSCHETTA,<br><br>Defendant. | Criminal Case Nos. 15-cr-076 (BAH) and 16-cr-187 (BAH)<br><br>Chief Judge Beryl A. Howell |

# MEMORANDUM AND ORDER

Having served less than half of his 156-month term of imprisonment, defendant Demetrius V. Muschetta now seeks compassionate release and a multi-year sentence reduction to a year of home confinement, due to "the risk that he will die of Covid-19 in prison" at Federal Correctional Institution Fort Dix ("FCI Fort Dix"), where he is currently incarcerated, given his obesity, chronic kidney disease, history of both bronchitis and smoking, and the "severe and devastating outbreak of Covid-19 cases." Def.'s Emergency Mot. Compassionate Release ("Def.'s Mot.") at 3, Criminal Case No. 15-CR-00076 (BAH), ECF No. 495.[1] After eleven prior convictions, including four narcotics-related convictions and a felony gun possession conviction, *see* Def.'s Presentence Report ("PSR") ¶¶ 93-103, ECF No. 419, defendant was sentenced, in 2017, to concurrent terms of imprisonment on his guilty pleas in two felony narcotics cases, one arising from a long-term wiretap investigation and the other from a traffic stop of defendant in Maryland that resulted in the seizure of over three kilograms of heroin from the trunk of his car. Specifically, defendant was convicted, in criminal case number 15-CR-00076, of conspiracy to

---

[1] As noted *infra*, defendant was charged and convicted in two separate criminal cases in this Court, criminal case numbers 15-CR-00076 and 16-CR-00187, with identical plea agreements, PSRs and other filings, including those related to defendant's pending motion for compassionate release, made in both cases. For convenience, where identical filings are referenced, only the filings made in 15-CR-00076 are cited.

distribute and possess with intent to distribute one kilogram or more of heroin, 500 grams or more of cocaine, and 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846, *see* Second Superseding Indictment, Count One, Criminal Case No. 15-CR-00076, ECF No. 258; PSR ¶¶ 11, 22; and, in criminal case number 16-CR-00187, which was transferred to this Court from the District Court for the District of Maryland, of possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i), *see* Indictment, Criminal Case No. 16-CR-00187, ECF No. 1-1; PSR ¶¶ 19, 22.

During the pendency of his motion for compassionate release, defendant tested positive, on December 27, 2020, for COVID-19. Gov't's Suppl. Opp'n Def.'s Mot. for Compassionate Release ("Gov't's Suppl. Opp'n"), Ex. A, Quest Diagnostics SARS CoV 2 (COVID-19) Tests ("COVID Test Record") at 16, December 27, 2020, ECF No. 507-1.[2] He then supplemented his motion with complaints about the lack of adequate treatment as a further basis for compassionate release. Def.'s Suppl. Compassionate Release Reply ("Def.'s Suppl."), at 1–2, ECF No. 503; Def.'s Reply Gov't's Suppl. Opp'n ("Def.'s Suppl. Reply") at 1–2, 4–5, 9, ECF No. 509. The government opposes defendant's early release. United States Opp'n Def.'s Emergency Mot. Compassionate Release ("Gov't's Opp'n") at 1, ECF No. 500. For the reasons set forth below, defendant's motion is denied.

**I.      BACKGROUND**

---

[2] The government's Exhibit A contains multiple records, including BOP Health Services administrative notes ("BOP Health Records") from January 1, 2021, *see* Gov't's Suppl. Opp'n, Ex. A at 2–3, ECF No. 507-1; December 22, 2020, *id.* at 4; and November 3, 2020, *id.* at 5; a record of defendant's vitals ("Vitals Chart") from January 4, 2021, *id.* at 6–7; a list of purified protein derivative (PPD) tests, *id.* at 8; lists of medical screenings, *id.* at 9, allergies, *id.* at 10, health problems, *id.* at 11–13, vision screens, *id.* at 14, and medications, *id.* at 15; and a Quest Diagnostics report on a COVID-19 test performed on defendant, *id.* at 16–17, that was reviewed by BOP on December 31, 2020, *id.* at 18. Citations to these discrete documents use the pagination automatically assigned by the Court's Case Management/Electronic Filing (CM/ECF) system.

In January 2015, the FBI Washington, D.C. Safe Streets Task force began a "long-term investigation" into a narcotics trafficking conspiracy involving defendant. Statement of Offense in Support of Guilty Plea ("Statement of Offense") at 3, ECF No. 306. The investigation revealed, through recorded telephone calls and text message intercepted between March 2015 and May 2015, that defendant and his co-conspirators purchased wholesale quantities of heroin and cocaine from multiple sources, and then sold wholesale amounts of cocaine, cocaine base (crack), and heroin to other drug distributors, in a drug distribution network that operated in and around the neighborhood of Barnaby Terrace in the Southeast quadrant of Washington, D.C., and extended into Maryland. *Id.*, *see* Gov't's Sentencing Mem., at 1–2, ECF No. 326. During the course of the investigation, law enforcement seized large quantities of illegal drugs and cash from members of this conspiracy, including one kilogram of heroin from a co-conspirator in a traffic stop on April 6, 2015, as well as various amounts of cocaine, crack cocaine, heroin, and drug packaging paraphernalia when search warrants were executed on residences of co-conspirators. Statement of Offense, at 3; PSR ¶ 43.

As to defendant, in particular, on May 6, 2015, law enforcement stopped him while he was driving in Maryland and found three, one-kilogram bricks of heroin and $663.62 in U.S. currency in the car, Statement of Offense, at 3; *see also* PSR ¶ 42, leading to the separate charge in criminal case number 16-CR-00187, transferred to this Court from the District of Maryland, *see* Consent to Transfer Prosecution ¶¶ 2, 4, Criminal Case No. 16-CR-00187, ECF No. 1. Law enforcement then executed a search warrant the same day on defendant's home and recovered, *inter alia*, "1500 grams of white powder that field-tested positive for cocaine; approximately 130 grams of brown powder that field-tested positive for heroin; and approximately 170 grams of crack cocaine (confirmed with DEA analysis)." Statement of Offense at 3–4; PSR ¶ 53 (noting

that "agents recovered 172 grams of cocaine base drying on the window sill [sic] of Muschetta's bedroom"). In addition, "[m]ultiple firearms were also recovered from this residence, which the defendant shared with children." Gov't's Opp'n at 3.

On November 22, 2016, defendant pled guilty, pursuant to a plea agreement under Rule 11(c)(l)(C) of the Federal Rules of Criminal Procedure, to a lesser included offense to the narcotics conspiracy charge in Count One of the Second Superseding Indictment, in criminal case number 15-CR-00076, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and to a possession with intent to distribute over one kilogram of heroin charge, in criminal case number 16-CR-00187, in violation of 21 U.S.C. § 841(b)(1)(A)(i). Plea Agreement at 1, ECF No. 305. The parties agreed that concurrent sentences "of 11 to 13 years' imprisonment, followed by five years of supervised release," on each conviction "is the appropriate sentence," *id*. at 5, and the Court ultimately accepted this plea agreement and the agreed-upon sentencing range which thus became binding. *See* FED. R. CRIM. P. 11(c)(l)(C) ("[S]uch a recommendation binds the court once the court accepts the plea agreement"). Absent this plea agreement, in which the government agreed to dismiss remaining charges and withdraw the notice of penalty enhancements triggered by his prior felony narcotics conviction, under 18 U.S.C. § 851, *see* Plea Agreement at 1–2; PSR ¶ 13, 23, if convicted at trial, defendant would have faced a mandatory minimum sentence of twenty years' incarceration for his narcotics trafficking conspiracy, plus at least one consecutive five-year mandatory sentence for the possession of a firearm in furtherance of his drug trafficking under Counts Five through Eight of the Second Superseding Indictment, *see* Second Superseding Indictment, at 5–6, plus another consecutive five-year mandatory sentence for a separate firearms conspiracy charge under Count Twelve, *id*. at 8. In other words,

he was facing if convicted at trial of all charges, at least, a total mandatory minimum of thirty years' incarceration. *See* Gov't's Opp'n at 15.

At sentencing, on March 20, 2017, defendant's sentencing range for both of the felony narcotics charges to which he pleaded guilty was determined to be 135 to 168 months (11.25 to 14 years) imprisonment, based upon his non-career offender total offense level of 31, and criminal history category of III. Statement of Reasons § 3, ECF No. 358. He was then sentenced to concurrent terms of 156 months' (13 years) incarceration on both charges. This Court explained that "a higher sentence [was] warranted" for defendant's offenses, Sentencing Hr'g Tr. 28:15–28:16, Mar. 17, 2017, ECF No. 409, citing several considerations, including the sheer quantity and variety of illegal drugs for which defendant was accountable for distributing over a significant time period, *id.* at 25:10–25:15; the harm to the Barnaby Terrace neighborhood in D.C. where significant amounts of the drugs were re-sold, *id.* at 24:23–25:1; the number of young people recruited into the drug conspiracy to facilitate the distribution, *id.* at 25:3–25:9; defendant's extensive criminal history over a fifteen-year period that was understated in his criminal history category because not all of his felony convictions or convictions for prior drug and firearm offenses counted in his criminal history score, *see id.* at 27:9–27:14; PSR ¶¶ 93–94; and defendant's management role in the conspiracy, *see id.* at 28:13–28:17.

Defendant has now served approximately 68 months out of the total 13-year term of imprisonment at FCI Fort Dix. *See* Def.'s Mot. at 7. Accounting for the 8.6 months of good time credit defendant has earned, *see id.*, the Bureau of Prisons ("BOP") calculates that he has served 49.2% of his sentence as of November 2020, *see* Def.'s Mot., Sealed Ex. B, Sentencing Monitoring Computation Data at 3, ECF No. 496-2, and has a projected release date of July 26, 2026, *see id.*; Gov't's Opp'n at 5. Due to the ongoing COVID-19 pandemic, defendant

submitted a request for consideration of compassionate release to the warden of his facility "sometime before May 5, 2020." Def.'s Mot. at 14 (citing Def.'s Mot., Ex. B, Inmate Request to Staff Response from M. Bridges, Executive Assistant, FCI Fort Dix, to Demetrius Muschetta ("Fort Dix Response") at 1, May 5, 2020, ECF No. 495-3). On May 5, 2020, defendant was notified that if he "still wish[ed] to be considered for Compassionate Release," he would need to "re-submit [his] request" under one of the specific categories provided in a BOP Program Statement, *see* Fort Dix Response at 1, and defendant did so, but "has heard nothing since," Def.'s Reply at 2.

On November 15, 2020, defendant filed the pending Emergency Motion for Compassionate Release, which he supplemented, on December 31, 2020, advising that he had tested positive for COVID-19, along with "585 other inmates at FCI Fort Dix and 12 staff members." Def.'s Suppl. at 1 (citing Def.'s Suppl., Ex. H, BOP COVID-19 Case Numbers & Testing Information for Dec. 31, 2020). In response to this alarming information about the number of positive tests for the virus at FCI Fort Dix, the government was directed to submit a response to defendant's supplemental filing "with updated information directly from the facility" about the factual allegations posed by the defendant as to his condition and his treatment, and the spread of COVID-19 within the facility. *See* Min. Order, Jan. 4, 2021, Criminal Action No. 16-CR-187. The parties completed their briefing on January 7, 2021, with a supplemental opposition from the government, *see* Gov't's Suppl. Opp'n Def.'s Mot. for Compassionate Release ("Gov't's Suppl. Opp'n"), ECF No. 507, and a supplemental reply from defendant, *see* Def.'s Reply Gov't's Suppl. Opp'n ("Def.'s Suppl. Reply"), ECF No. 509. The motion is now ripe for review.

## II.     LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed;' but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)). As originally enacted, one such exception, codified in 18 U.S.C. § 3582(c)(1)(A), empowered the BOP Director to "petition the court for a reduction in sentence . . ." and gave courts the authority to grant those petitions if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *id.*, they found "that the reduction was justified by 'extraordinary and compelling reasons.'" S. Rep. 98-223, at 118; *see also* Pub. L. No. 98-473, Title II, § 212(a)(2). The First Step Act of 2018, Pub. L. No. 115-391, expanded the exception in section 3582(c)(1)(A) to authorize a defendant directly to file a motion for such compassionate release with the court after exhausting any "administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion" on his behalf or he waits at least "30 days" after he delivers his request for compassionate release to "the warden of [his] facility." 18 U.S.C. § 3582(c)(1)(A).

In resolving motions for compassionate release, the court may only reduce a term of imprisonment "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," *id.*, and upon making two findings: first, that "extraordinary and compelling reasons warrant such a reduction," *id.* § 3582(c)(1)(A)(i);[3] and, second, "that such a reduction is

---

[3]  Though not relevant to the instant motion, the court may also reduce a prisoner's sentence if he is "at least 70 years of age" and has served at least 30 years in prison, when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii).

7

consistent with applicable policy statements issued by the Sentencing Commission," *id.* § 3582(c)(1)(A).[4]

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended by the Commission on November 1, 2016, applies to motions for reduction of terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A), and provides guidance on both of the statutorily required findings.[5]  It states that a reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A)–(B); (2) the defendant poses no danger to the safety of any other person or the community, *id.* § 1B1.13(2); and (3) "the reduction is consistent with [the] policy statement," *id.* § 1B1.13(3).  The commentary to this policy statement describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction," including "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, *id.* § 1B1.13, cmt. n.1(D).[6]

---

[4] The Sentencing Commission is tasked, in its organic statute, with promulgating general policy statements regarding "the sentence modification provisions set forth in section [] . . . 3582(c) of title 18," 28 U.S.C. § 994(a)(2) and "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," *id.* § 994(t).

[5] U.S.S.G. § 1B1.13 has not been updated since the enactment of the First Step Act, due to the lack of a voting quorum on the U.S. Sentencing Commission.  *See* U.S. Sent'g Comm'n, Annual Report, at 3 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.  Consequently, this policy statement is framed to provide guidance in resolving a "motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13.  Nonetheless, this policy statement provides guidance in resolving compassionate release motions filed directly by defendants and must be considered to ensure any reduction is at least "consistent with" this applicable policy statement.  18 U.S.C. § 3582(c)(1)(A); *see also United States v. Tobias*, No. 19-143 (BAH), 2020 U.S. Dist. LEXIS 144398 at *9–10 (D.D.C. Aug. 12, 2020).

[6] The other three "extraordinary and compelling" circumstances described in the commentary to U.S.S.G. § 1B1.13 are not invoked and have no relevance here.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) (describing defendant, who "is suffering from a terminal illness" or has chronic and "substantially diminish[ed] . . . ability . . . to provide

### III. DISCUSSION

Defendant contends that the § 3553(a) factors "justify [defendant's] compassionate release," Def.'s Mot. at 28, emphasizing his vulnerability to COVID-19, his remorse for his actions, Def.'s Reply at 18, *see also* Def.'s Reply, Ex. F, Muschetta Letter to the Court ("Def.'s Letter"), ECF No. 502-4, his history, and his post-sentence rehabilitation as a basis for discounting the danger defendant's release would pose to the community, Def.'s Mot. at 34–35. The government opposes defendant's motion for compassionate release, arguing that defendant fails to show that a reduction in sentence is warranted "in light of the danger that [he] would pose to the community . . . and the relevant sentencing factors under 18 U.S.C. § 3553(a)," Gov't's Opp'n at 12; *see also id.* at 1–2.[7] While the significant risks posed by COVID-19 pandemic cannot be gainsaid, especially in light of defendant's contraction of the virus and the apparent shortcomings in controlling outbreaks of the virus at FCI Fort Dix, the Court nevertheless concludes that a sentence reduction in the form of compassionate release to home confinement for one year is inappropriate here.

The defendant dedicates significant space in his briefing describing his "multiple co-morbid conditions [that] heighten his risk of serious complications or death from Covid-19 at FCI Fort Dix . . . [and so] 'qualif[y] as an extraordinary and compelling reason' warrant[ing] a

---

self-care" within the prison environment; who is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less;" or for whom "[f]amily [c]ircumstances" involve "[t]he death or incapacitation of a caregiver of the defendant's minor child or minor children" or the incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner").

[7] The government also challenges whether defendant has "exhausted his administrative remedies," Gov't's Opp'n at 6, pointing to BOP's response to defendant's "request for consideration for Compassionate Release/Reduction in Sentence (RIS)," Fort Dix Response at 1. Defendant appears to have complied with BOP's directions in this response, however, because, on May 5, 2020 "he *did* resubmit a request identifying a specific category as requested by his institution, and has heard nothing since." Def.'s Reply at 2. In these circumstances, the Court finds that he sufficiently exhausted his administrative remedy since more than 30 days elapsed before he filed this action.

reduction" in his sentence. Def.'s Mot. at 18 (citing *United States v. Johnson,* 464 F. Supp. 3d 22, 27 (D.D.C. 2020)). The government concedes that "the defendant has demonstrated the 'extraordinary and compelling reasons' required by the compassionate release statute based upon his diagnosed obesity and chronic kidney disease, in combination with the risks posed by COVID-19." Gov't's Opp'n at 13 n.5.[8] The government's concession aligns with prior findings by this Court that "the current global pandemic may, in some circumstances, 'present[] such an 'other reason'" that justifies a finding of "extraordinary and compelling" circumstances under U.S.S.G. § 1B1.13, cmt. n.1(D). *See Tobias*, 2020 U.S. Dist. LEXIS 144398 at *10 (quoting *United States v. Morris*, Criminal Action No. 12-154 (BAH), 2020 U.S. Dist. LEXIS 91040 at *7 (D.D.C. May 24, 2020)).[9] Thus, defendant has fulfilled one of the determinations set out in U.S.S.G. § 1B1.13 to qualify for sentence reduction.

Even upon a showing of extraordinary and compelling reasons, however, both the statute and the policy statement require consideration of "the factors set forth in 18 U.S.C. § 3553(a)," *Morris*, 2020 U.S. Dist. LEXIS 91040 at *6–7 (citing U.S.S.G. § 1B1.13 and 18 U.S.C. § 3582(c)(1)(A)). In addition, the policy statement requires courts to determine that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Neither of these factors is satisfied.

---

[8] The parties disagree about which of defendant's underlying conditions, in the context of the pandemic, satisfy the "extraordinary and compelling" requirement. Defendant points to his obesity, Def.'s Mot. at 22, chronic kidney disease, *id.* at 23–24, seizure disorder, *id.* at 24–25, bronchitis, *id.* at 25–26, smoking history, *id.* at 26, Vitamin D deficiency, *id.* at 27, and his race and gender, *id.* at 27–28, as collectively making him "particularly vulnerable and put him in grave danger of dire complications or even death," *id.* at 21–22, while the government's concession relies only on defendant's "diagnosed obesity and chronic kidney disease," Gov't's Opp'n at 13. Whether the other "health conditions relied upon in defendant's motion would independently satisfy the statutory requirement of 'extraordinary and compelling' circumstances," *id.*, need not be addressed given the government's concession.

[9] Following defendant's report of his COVID-19 diagnosis and recovery, the government suggests that this now "weighs against a finding of extraordinary and compelling circumstances." Gov't's Suppl. Opp'n at 2–3. As defendant explains, however, research shows this virus can result in reinfections and worsening symptoms. *See* Def.'s Suppl. at 4–6. The Court therefore finds that defendant continues to satisfy the "extraordinary and compelling" requirement.

Consideration of the factors listed in § 3553(a) counsels against release. First, as described above, the "nature and circumstances of [defendant's] offense" are serious, 18 U.S.C. § 3553(a)(1), as defendant acknowledges, *see* Def.'s Letter. Indeed, defendant was involved in managing a large-scale conspiracy to distribute and possess with the intent to distribute multiple types of illegal narcotics, *see* Statement of Offense at 6, and had a hands-on role in facilitating the operations of this conspiracy. He was stopped with three kilograms of heroin in the trunk of his car and stored significant quantities of heroin and other illicit substances in his home, *id.* at 3–4, along with firearms, Gov't's Opp'n at 3. Moreover, defendant "exercised decision making authority [in the conspiracy] by determining the price of the narcotics and controlled the supply . . . to other co-conspirators." PSR ¶ 76. Guns were also involved in defendant's offense conduct, with firearms recovered from his residence, and from his co-conspirators. *See, e.g.*, Am. Judgment at 1–3, ECF No. 426 (reflecting conviction of co-defendant Chaka Al-Fatah for using and carrying a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c)). These circumstances contributed to defendant being sentenced at the maximum of the binding agreed-upon term in the plea letter and at the mid-point of the applicable guideline sentencing range. Statement of Reasons at 4, ECF No. 358 (citing as reason for sentence "defendant's extensive criminal history[, which] include[s] prior gun and drug-related offenses, and his managerial role in the charged conspiracy.").

Second, defendant's "history and characteristics" demonstrated that despite his prior convictions, including periods of incarceration, defendant continued not only to recidivate but to engage in more serious criminal conduct over time, culminating in his two felony narcotics convictions in this case. Increasingly exacerbated criminal conduct over time is a significant consideration in assessing whether a significant sentence is warranted for deterrence and to

protect the community from further crimes by the defendant. Here, defendant's eleven prior convictions included convictions for possession of an unlicensed, unregistered firearm in 2002, PSR ¶ 93, cocaine possession in 2005, *id.* ¶ 94; marijuana possession in 2007, *id.* ¶ 99; possession of cocaine with intent to distribute in 2008, for which he served a 16-month custodial sentence, *id.* ¶ 100; and attempted possession of cocaine in 2010, *id.* ¶ 101. In connection with the 2008 cocaine conviction, defendant was found exiting an apartment bedroom at the same location where he was arrested for the 2007 marijuana conviction and, in that bedroom, law enforcement recovered a loaded revolver, 31 ounce bottles of PCP, 188 grams of cocaine, 138 grams of marijuana, 79 MDMA pills and loaded firearm, along with U.S. currency and drug paraphernalia, including digital scales, empty zip lock bags, and empty ounce bottles. PSR ¶ 100.

Defendant was not deterred by his prior convictions and the penalties imposed. He not only reoffended, but became a manager in a conspiracy to distribute narcotics that involved at least thirteen people, who were also charged as co-defendants, and boldly engaged in conduct involving his personal handling, storage and transportation of large quantities of illegal narcotics. *See* PSR ¶¶ 59–71. To be sure, defendant has faced challenges presented by his instable childhood and familial drug use and addiction, *see* Def.'s Mot. at 33–34; *see* Sentencing Hr'g Tr. 25:16 – 26:1, but these do not overcome the paramount concerns of this Court to ensure adequate deterrence and to protect the public from further criminal conduct by defendant, *see* 18 U.S.C. § 3553(a)(2)(A)–(C).

Third, defendant's 156-month sentence falls within the sentencing range under the applicable guidelines as well as the agreed-upon range binding on the Court set out in the plea agreement. As noted, this sentence reflects a considerable reduction in the otherwise applicable

mandatory minimum penalty, with enhancement, of at least twenty years' incarceration on the narcotics conspiracy conviction alone that defendant would have faced had he been convicted at trial. *See* Gov't's Opp'n at 14–15. At present, defendant has served less than half of his 13-year sentence. *Id.* at 14. A further reduction to a year of home confinement, as he requests, would fail to "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A).

Although insufficient to overcome the overwhelming weight of the other factors against the requested sentence reduction, one § 3553(a) factor favors defendant's release. A court must consider the need to "provide the defendant with needed . . . medical care . . . *in the most effective manner,*" *id.* § 3553(a)(2)(D), and defendant's reports of the conditions within FCI Fort Dix, which has seemingly failed to implement effective protocols to halt and limit the spread of the virus, are very troubling. As of this writing, FCI Fort Dix has reported the highest number of COVID-19 cases of any BOP facility in the country, with a whopping 1319 inmates and 45 having tested positive and recovered from the disease to date. *See* Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Jan. 21, 2021). Based upon information provided by defendant's girlfriend and defense counsel's brief call with defendant on December 31, 2020, defendant reported that he was experiencing significant trouble breathing and had not seen by any medical professionals on that date. *See* Def.'s Suppl. at 1 n.1; *see also* Def.'s Second Suppl., Ex. L, Decl. of Yaimelys Ponce Taylor at ¶¶ 2–5, ECF No. 504-1. While the government disputes the seriousness of defendant's symptoms—indicating that he "was seen by medical personnel and reported no cough, shortness of breath" or any other symptoms on December 31, 2020, Gov't's Suppl. Opp'n at 1—defendant indisputably tested positive for COVID-19, based a test given on December 23, 2020, *id.*, with the positive diagnosis determined on December 27, 2020, COVID Test Record at 16. Defendant further asserts that no

personnel, medical or otherwise, has inquired into his health since his December 23, 2020 COVID-19 test, Def.'s Suppl. Reply at 1, and describes a significant episode where he had difficulty breathing and his cellmate spent 40 minutes trying to attract the attention of officers, Def.'s Suppl. Reply at 1–2.  He also complains that his water consumption was limited to one-half gallon jug of water per day despite his illness, *id.* at 2.  While the government points to medical records indicating that defendant has had his temperature taken daily between December 28, 2020 and January 1, 2021 by licensed providers, *see* BOP Health Records at 6, defendant contests these representations stating that the government is relying on records titled "Clinical Encounter – Administrative Note," which are only created "when the BOP medical professional *has not seen the inmate*," *id.* at 2 (emphasis in original).

      Notwithstanding the disturbing level of care that appears available or afforded residents at FCI Fort Dix, the last factor of the danger defendant poses to the community forestalls the extraordinary early release and sentence reduction he seeks.  Defendant argues that he has no history of engaging in violence, Def.'s Mot. at 34, and that he is classified as a "low security" inmate who security level should be "decreased to minimum" according to the BOP, *id.* (citing Def.'s Mot., Ex. D, Classification Form, ECF No. 496-4 and Def.'s Mot., Ex. F, Inmate Profile, ECF No. 496-6).  To bolster this argument, defendant references the important and commendable steps he has taken while incarcerated to obtain his GED, to participate in classes "to provide him the skills needed to work lawfully upon release," including a commercial drivers' license course and a floor care equipment course, *id.* at 35, and his procurement of a provisional offer of part-time employment upon his release, Def.'s Suppl., Ex. K, Letter from Doni G. Russell, Business Manager, The Bullock Firm, LLC, to the Office of the Federal Public Defender, Nov. 30, 2020,

ECF No. 503-4.[10]  Defendant has also continued to enjoy significant support from his family, friends and partner, many of whom submitted letters in support of his release, remarking on the important role he plays in their lives.  *See* Def.'s Reply, Ex. G, Letters from Wanda Muschetta (mother), Jocelyn Wilson (sister), Yaimelys Ponce Taylor (partner), Keani Curry (godchild), Theresa Muschetta (sister), Christopher Quander (brother), Tuesdai N. Epps (friend), and others, ECF No. 502-5.

Notwithstanding these positive aspects of defendant's current efforts towards rehabilitation, his argument minimizing "the nature and seriousness of the danger to any person or the community that would be posed by [defendant's] release," 18 U.S.C. § 3142(g)(4), for lack of a violent record is not persuasive for at least three reasons.  First, a history or propensity to engage in violent conduct is not the sole measure of danger to the community or other persons.[11]  Second, the applicable guideline policy statement directs that a reduction in sentence must be predicated, in part, on an affirmative determination that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).  As to this factor, defendant's criminal history of repeated and increasingly serious criminal conduct, even after a period of incarceration, as detailed above,

---

[10]     The government points out that defendant's progress on some fronts has been fairly recent, citing, for example, that defendant, who has acknowledged he has a serious drug abuse problem, "wait[ed] until March of 2020 to request joining Narcotics Anonymous, and until May of 2020 . . . to request the drug treatment and counseling that is so essential to his rehabilitation."  Gov't's Opp'n at 15.  As defendant notes, however, BOP "prioritizes those within 36 months of release" for drug treatment programs.  Def.'s Reply at 21.  In any event, the Court recognizes that defendant has made important progress for which he deserves credit.

[11]     The government urges that defendant be viewed as a danger to the community based on his "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN") score, which lists defendant as having a "medium" risk of recidivism.  Gov't's Opp'n at 15.  The PATTERN system, created by the First Step Act in compliance with 18 U.S.C. § 3632(a), "determine[s] the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner . . . [in order to] assign each prisoner to such programming accordingly."  Def.'s Reply at 19 (citing 18 U.S.C. § 3632(a)(3)).  As such, the PATTERN "score" is tool for internal use by BOP for programming placement and would be wholly misapplied to make the requisite assessment of whether defendant is a danger to the community or other person, under 18 U.S.C. § 3553(a)(2)(C) & 5(A) and U.S.S.G. § 1B1.13(2) (referencing 18 U.S.C. § 3142(g)).

raises concern about the need for deterrence and his risk of further recidivating. Finally, and relatedly, defendant's management of a large narcotics conspiracy, had a detrimental and disruptive effect on the Barnaby Terrace neighborhood, where much of the drug distribution activity occurred. Defendant was not the only defendant involved in this conspiracy to possess firearms to facilitate the drug operations, and the risk such guns pose to the safety of innocent bystanders and others residing in the neighborhood cannot be underestimated. Given defendant's criminal history and the nature and scope of his underlying offense conduct, in combination with the other § 3553(a) factors, no finding can be made that defendant presents no danger to the safety of any other person or to the community.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, defendant has not demonstrated that a reduction in his sentence comports with the factors laid out in 18 U.S.C. § 3553(a) or the requirements under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13. Accordingly, it is hereby

**ORDERED** that defendant's Motion for Compassionate Release is **DENIED.**

**SO ORDERED.**

Date: January 22, 2021

_____
BERYL A. HOWELL
Chief Judge